The last case this morning is Canopy Growth Corporation v. GW Pharma, 2022-1603. Mr. Willey? Yes, Your Honor. May it please the Court? Thank you, Your Honor. The District Court acknowledged Canopy's argument that GW's proposed construction would exclude a disclosed embodiment in the specification, but then failed to weigh that factor in its analysis. Now, without weighing that factor, the District Court concluded this was an extremely close call. When that factor is properly considered in the analysis, the intrinsic record and the extrinsic record point to reversal. In fact, the District Court's own findings, when that factor is included, point to reversal. Can I just ask? So I know that we've had at least one statement that I think over broadly says that it's strongly disfavored to adopt an interpretation that excludes an embodiment, right? At that level. That's what happens every single time a specification covers a number of embodiments. And in the prosecution, things are narrowed to not every single time, but quite commonly exclude a number of embodiments. And what we have here is language that on its face is naturally suggests that the modifier covers both of the things that come after the modifier. And then an extraordinary prosecution history that sure looks like it says we're excluding two of the three possibilities here. So, of course, narrowing in the prosecution will maybe not every time, but very, very commonly exclude a specification embodiment. Yeah, absolutely, Your Honor. And there are cases where the court has found that the claim cannot reasonably be construed to cover what the claim says. For example, here, there is a supercritical embodiment in the specification that's excluded when you put the word subcritical in. I take issue with Your Honor's statement that the prosecution history is illuminating here. The district court certainly didn't think the prosecution history was more illuminating than the specification. We're under de novo review here, so forget about what the district court says. Why is this winnowing down of possibilities through several different stages, but not just an unmistakable narrowing to where the district court ended up here as a construction? Okay, so I think where I would take issue with that, as a couple of things first, I would take issue with that in that the three alternatives that are stated in the specification and that were included in the claim, I think Your Honor's question assumes that those are mutually exclusive alternatives. And as the district court found, there is no statement that they are necessarily mutually exclusive alternatives. So they were put as three alternatives in the claim. Yeah, they continued to take several of those out. And when they took the two out and they got down to subcritical pressure and temperature conditions, the examiner still wouldn't allow the claims over prior art that is just supercritical extraction prior art. And so what did they do then? They put some specific temperature and specific pressure limitations into the claims, that were both subcritical. And the examiner still would not allow the claim. There would have been no reason to amend the claims to put those additional temperature and pressure limitations in. If the original claim language, subcritical pressure and temperature conditions already covered, where both pressure and temperature had to be subcritical. That wouldn't have given any advantage versus the prior art. And indeed, those were taken out and the claim broadened out again to focus on subcritical pressure and temperature conditions. It doesn't, the final claim recites subcritical pressure and temperature. The final claim recites subcritical pressure and temperature conditions. Yes, well, adding both doesn't change the meaning. Adding both does change the meaning, Your Honor, because persons of ordinary skill in the art understand subcritical pressure and temperature conditions to refer to either the pressure or the temperature being subcritical. In fact, the district court, focusing on the claim language at Appendix 14, found that was, said that was one way to read the language. People of ordinary skill in any art still speak the language, English language, under subcritical pressure and temperature. Right. And subcritical include temperature, includes temperature as well. What the district court found in Appendix 14 and what we contend is if you read the phrase as a whole, subcritical pressure and temperature conditions, what all that recognizes is that it's both pressure and temperature conditions that affect whether the CO2 is subcritical or not. And in Appendix 14, the district court found that you could read the claim language that way. All this court's case law requires when you are excluding an embodiment, which is undisputed here, is that the claim language can be reasonably read to cover that embodiment. Doesn't even say it's the best reading of the claim language. It just says that it can the claim language be reasonably read to include the excluded embodiment. That's the Odie case. Now, I'm going to use the claim language in a sentence. Subcritical pressure and temperature conditions include both where the pressure and temperature is subcritical or where only one is. Okay. That clearly in that sentence, subcritical pressure and temperature conditions, it's reasonable use of the term, covers all three possibilities. And that's what a person of ordinary skill in the art would understand reading the language. The district court's construction really hinges on two things. It's the word and and the word or with the three embodiments in the specification separated by the word or. With respect to the word and in the claim, well, the word and in the claim doesn't indicate much because we concede that, yeah, pressure and temperature conditions are what determine whether CO2 is subcritical or not. So that's not illuminating. So when we turn to the specification and we see three examples listed in the specification, the word or is used to separate those. Neither this court nor any grammar dictionary or grammar treatise that I'm aware of has ever said that things that are separated by the word or are necessarily mutually exclusive alternatives. They can be genus and species. And in our brief, we give you five examples of patents where people include genus and species in the specification and genus and species in the claim. So people do this in patents. People put things that are not mutually exclusive, genus and species in the same claim. There may be a claim scope reason to do that. It's sort of like you get self-claim differentiation within the same claim as one reason to do that. There may be some written description reasons to do that. But we gave you examples where people do that. So if you look at the specification and you look at those three examples and you say, well, can I reasonably read that third alternative to be a genus of including any example where it's subcritical pressure and temperature? Then the claim language can reasonably be read to cover any example that is subcritical pressure and temperature. And that's what the, in this case, extrinsic evidence is relevant to consider. Before you get to that, I recognize we're on de novo review. But I'm curious about the argument that I guess you were planning to start with about the district court not giving any weight to the exclusion of the embodiments. How do you know that he did not give it any weight at all? Where would I find that? Well, there's, he acknowledges the argument, but then he doesn't address how it impacts the claim construction. Don't we normally, in that circumstance, assume that the district court, in fact, did consider it and give it the weight that he thought it deserved? I don't think you can assume that a district court has addressed something that's not addressed in their opinion. But it is addressed in the opinion. He just said that. Well, not in the analysis. He just acknowledged that we made the argument. He doesn't address it in the analysis. On what basis or what authority would you cite that would allow us to say, after expressly recognizing your argument, address and discussing it in his opinion, but not giving it express discussion in his analysis, it's just elsewhere in his opinion. What would allow us to say he overlooked it? Well, this court has said that the presumption is a strong presumption. That a construction that excludes an embodiment is rarely, if ever, correct. And also that the construction need only be reasonable. The fact that he did not do an analysis that determined what the most, whether the construction was only reasonable as opposed to what the plain, ordinary meeting was. This court's cases under excluding and preferred, excluding an embodiment, do not require the construction to be the best construction from the intrinsic evidence. It need only be a reasonable construction. So I think the fact that he didn't do an analysis of what construction was most reasonable suggests that he overlooked this. And I'm now into my rebuttal time. We will save it for you, Mr. Willey and Mr. Flatman. Your honors. May I proceed? Please. May it please the court. This is a straightforward construction of the plain language of the claims. Putting an adjective subcritical before a noun, pressure, and using the word and as it's used in common usage. Canopy wants to import different language into the claim in the guise of not excluding a disclosed embodiment. But this is not an excluded embodiment case. It's a case, as this court has ruled upon in several other instances, where an embodiment is not claimed, and is expressly not claimed. What do you think is the noun or are the nouns in this phrase? The nouns at issue are pressure and temperature. Why aren't those words serving as adjectives for the only noun in the conditions? I'm not a grammarian, your honor, but I understand that they can form something known as noun adjuncts, where you can put nouns together with an adjective before them in front of another noun as well. But here we have all of those nouns in parallel, and they say subcritical. They're not in parallel. There's pressure, even distributing them, there's pressure conditions and temperature conditions. Well, and subcritical pressure and subcritical temperature. And then subcritical clearly modifies something that's coming afterwards. But we know one thing for certain, regardless of how this is parsed, and that's that subcritical. But I don't think that this is minor in the other side's argument. I thought the other side's argument, as I was hearing it, was that there are a set of conditions, pressure conditions and temperature conditions, and what has to be subcritical are those conditions, not each of them, just the conditions that end up producing the result that the word subcritical identifies. And to do so, they create a new phrase throughout their brief, subcritical conditions, which doesn't appear in the claim language at all. When the claim language or the patent wants to talk about that sort of situation, where there's a mixed condition, it does so very expressly. It uses the term subcritical range. And it then defines that as having a supercritical pressure and a subcritical temperature. So these applicants knew very precisely how to define their invention when they wanted to. They also knew how to define conditions where both pressure and temperature were either supercritical, and that was alternative 1, that's in the specification at column 5, lines 10 to 20, and also in the pressure conditions there on column 7. Or in parallel fashion, subcritical in alternative 3, also in the specification where both pressure and temperature conditions are called out as being subcritical. When they wanted to say something different, they were very definitive about it and called it a subcritical range, which could be akin to what plaintiff's appellants are calling subcritical conditions or subcritical phase or subcritical range throughout their brief. But that's not a term that the patent applicants use. They use the very plain, ordinary term. And if we look at the specification in the file wrapper, we see that they very expressly failed to claim alternative 1 or alternative 2 in their patent. In fact, they expressly omitted those options, those alternatives from their claims, whereas they had expressly claimed those very same options in the parent patent, the 078 patent. And the district court did take note of this. I do take issue with one thing that my colleague said earlier, that the district court did not address this genus species argument, possibility of alternative 3 being a genus that encompasses alternative 2. He very expressly did so in his opinion at A21 to 22. And he weighed that argument and he decided that it was a more strained argument than the one that found that there were alternatives based on the way that those alternatives were laid out in the specification in the file wrapper. And also based on grammar. Is that the same thing as the excluding embodiments argument in your view? And if not, where did the district court take account of the excluded embodiments argument? Yeah, that is certainly part of it, where he found that those were in fact separate alternatives that were not claimed and therefore not excluded embodiments, but rather unclaimed embodiments, Your Honor. Where he also takes note of it is, of course, in the... Between a not claimed and an excluded? Sure. It's much like this case precedent in the TIP systems case, where the court decided that it was okay or held that it was okay not to claim all embodiments that had been disclosed when the intrinsic language of the claim, in that case, the word and, clearly did not claim, purposefully did not claim those other embodiments, which did not require conjunctive elements. In that case, I think it was a phone system, and the claim language said that it had to connect to one thing and another thing. And this court found that and meant both. Now, there were embodiments in that case, where the phone system only connected to one or the other. So, were they technically excluded embodiments? One could say so. But I think the more apt way to put it is that they were unclaimed. Just as they were unclaimed here, and even more tellingly, were claimed in the parent patent. So, there was a choice here that was made that's evident from the file wrapper along those lines. Is it fair to say unclaimed embodiments are a subset of excluded embodiments? It's one way to exclude an embodiment is to just fail to claim it? I think that's the way the court actually put it in the TIP systems case, Your Honor, and also in the other precedent that follows those lines. Here, I think it's even more of a stretch, because it's unlike the cases where embodiments were truly excluded as a matter of error, such as the one cited in the defendant's brief, the CATS case, the OD case that we heard about earlier, where there was a full-throated discussion of the embodiments that were actually excluded in the specification. In contrast here, it's just an item in a list, and it appears one more time in a list later in the patent. There's no example of any sort of mixed conditions in this patent. It's all about supercritical, to tell you the truth, Your Honor. So, there's no true excluded embodiment here, I would argue. It's not like those other cases where the court did find error, because there was no reason in the intrinsic evidence to exclude an embodiment, given the language that was used in those cases. There was no and or situation, for instance. It was just a technical term in each of the CATS case and the ODC case that could have read on any of, say, the four embodiments, and one or two were improperly excluded, even though this was fully described. So, I do think there's a distinction, even though they could be called unclaimed but excluded. Now, the other point I would take issue with in the counsel's argument, he used a sentence and once again said that subcritical liquid CO2, that subcritical pressure and temperature conditions, can include either subcritical pressure or temperature, or the other way around, I believe, and then supercritical pressure or temperature on the other side. And that's not just wrong, as a matter of grammar, because the word supercritical doesn't appear anywhere in the claim to begin with. We have to import that word in the claim to make that even possible. And we have to put it in the first position. In other words, we have to take out subcritical and put supercritical in its place to make that work. Because you need supercritical pressure and subcritical temperature to have liquid CO2. You can't have subcritical pressure and supercritical temperature. That's a gas. So, it's a scientifically impossible situation. So then, to get to the only alternative in his hypothetical that might work, you now have to take the term subcritical and move it from the first position in that phrase, before pressure, and move it to before temperature, and have the claim rewritten as calling for a subcritical pressure and a supercritical pressure. Sorry, supercritical pressure and subcritical temperature. If you turn it around, it also doesn't work. I'm sorry, I just misspoke. If you had a subcritical pressure and a supercritical temperature, you'd have the same problem. You'd have a gas. So, this doesn't work as a matter of grammar or science, and a person with skill in the art would understand it both ways. They've taken a shifting sands approach to their construction in this case, and I think it's telling. They believe, the reason they filed this case is evident from their complaint at Appendix 320, is that they believed that we had both subcritical pressure and temperature, and that's in the amended complaint, as I've cited. When they learned in discovery that that was not the case, they shifted positions and came up with this claim construction, and urged that your honor should, or that the district court, should interpret the claim to use and or effectively, instead of and in the claim term, to allow for this mix of conditions. And they asserted 10 times, I believe, in the brief before your honors, that that was the proper interpretation of the claim, allowing a mix and match of either condition. When we pointed out in our brief that that was scientifically impossible with regard to subcritical pressure conditions with supercritical temperature conditions, they pivoted again, said that our position was absurd, not theirs, but ours. And that this court should go ahead and take the one alternative that scientifically works, and put the term supercritical before pressure, where it just is not in the claims. So, we submit that that's a shifting stance approach that this court should not adopt. Your honors, there was- Your opposite number made about one of the things that happened in the prosecution, which was having reduced the three options down to one. There was then some additional limitations, I think as I heard him, maybe incorrectly, adding some particular temperatures before eventually taking those particular temperatures out. But that even the addition was an important sign that the remaining category, which is the one we have in the claim, doesn't require that both of the conditions be subcritical. It certainly wasn't argued that way in the prosecution history, your honor. What was the point of their adding the particular temperatures? I think they just claimed more narrowly at first, as they had with option B, where they had included specific temperatures and pressures in the first instance before deleting that. And ultimately, they deleted C with the limitations, option three with the limitations. They put in the one that we have today, along with dependent claims that actually have those limitations. But they're all consistently subcritical pressures and temperatures throughout. So, I don't think it cuts one way or another, your honor. And certainly, nothing was made of it in the prosecution history. And your honors, in terms of the extrinsic evidence, I don't think any mention has been made of it. So, I'll just remark that the district court did consider it and found it non-persuasive and certainly not contradicting in any way the intrinsic evidence in the plain meaning of the claims. I'm happy to answer any questions your honors might have. I think not. Thank you, Mr. Plotman. Mr. Willey has some rebuttal time. When this court has looked at a prosecution history, it has looked at the prosecution history as a whole, and it has looked at the substance of what has occurred in the prosecution history. Looking at the substance of this prosecution history as a whole, the prior art was distinguished on the ground of subcritical versus supercritical. That was the only distinction. There was no distinction made as to why the CO2 was subcritical. Moreover, the excluded embodiment is the very embodiment that the applicant contrasted. It said, in contrast, in the specification, contrasted it with the supercritical embodiment. So, what GW is suggesting here is that the lawyer for Canopy deliberately excluded the embodiment that they contrasted with the supercritical embodiment, and for a reason that had nothing to do with the prior art they were distinguishing, and where the specification does not reveal any functional difference as to why the CO2 is supercritical. Now, counsel said, well, I used the term subcritical conditions at some point during my argument. That's not in the specification. It is in the file history, though, Your Honor. In fact, the last office action that got this allowed, we talk about the Gregg reference, not disclosing, doesn't provide any teaching or suggestion to use CO2 in liquefied form under subcritical conditions. The undisputed extrinsic evidence on this point is that term subcritical conditions is used to refer to both a liquid that is subcritical due to both pressure and temperature being subcritical, and due to temperature being subcritical and pressure being supercritical. Can we find the term subcritical conditions in the patent? Can you find the term subcritical conditions alone in the patent? Correct. I believe it may be in there once when it's talking about the separation step. Isn't it true that it more often says subcritical range? So it says subcritical range. And that was one of the things the district court keyed on. It said, well, you said subcritical range. That somehow distinguishes conditions. But in the very next column, the term range is used for the supercritical range. So that's not, I think the district court was reaching for some sign to resolve this dispute. What about Mr. Flatman's argument that you've made up the term essentially subcritical conditions, use it in your briefs, use it here today, and yet that's just not what's in the patent? Well, subcritical, no, your honor, subcritical conditions, to be clear, that was what was argued during prosecution. That was the term used during prosecution. I'll cite you where subcritical conditions was used in the prosecution history, appendix 141, appendix 157. Similarly, the term subcritical CO2 was used during prosecution. To distinguish the other reference, you can find that at, that's the Webster reference. You can find that at appendix 108, 109, 140, and 157. And then what you'll find in our reply brief and in our opening brief are multiple references that use the term subcritical CO2 and use the term subcritical conditions to refer to the multiple possibilities. I want to make one last point, if I may. One thing that is critical here is time. Okay. We'll give you a sentence or two. Yeah, just a sentence or two. So, counsel talked about the scientific impossibility issue. He quoted my sentence. I think if you'll go back and look, I didn't include the word liquid in the hypothetical sentence I gave, and this is the same thing they did in their brief. They tried to make it look like we were trying to claim a scientific impossibility. We're not. We acknowledged our proposed construction includes liquid in the claim. Our only point is that if you look at the term subcritical pressure and temperature conditions on its own, that that refers to all three possibilities. The term liquid is in the claim to exclude one of those three possibilities. Thank you, counsel. Case is submitted. And that concludes our arguments for today.